

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-1994

# Wilmer v. Johnson

Precedential or Non-Precedential:

Docket 93-1283

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Wilmer v. Johnson" (1994). *1994 Decisions.* Paper 91.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/91

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-1283

_____


JOSEPH WILMER, UNITED STATES OF AMERICA,
EX. REL.,

                                    Appellant
                    v.

NATHANIEL JOHNSON, DIRECTOR, PRETRIAL
SERVICES DIVISION OF PHILADELPHIA COURT
OF COMMON PLEAS; THE DISTRICT ATTORNEY
FOR PHILADELPHIA COUNTY; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA


_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 92-06899)
_____


Submitted Under Third Circuit LAR 34.1(a)
April 20, 1994

Before:  BECKER, NYGAARD and WEIS, Circuit Judges.

(Filed   July 22, l994 )


                    PETER ROSALSKY
                    Defender Association of
                    Philadelphia
                    121 North Broad Street
                    Philadelphia, PA   19107

                         Attorney for Appellant


                    DEBORAH FLEISHER
                    Assistant District Attorney

DONNA G. ZUCKER  
Chief, Federal Litigation

RONALD EISENBERG
Deputy District Attorney
Law Division
ARNOLD H. GORDON
Chief Deputy District Attorney
LYNNE ABRAHAM
District Attorney
1421 Arch Street
Philadelphia, PA  19102–1582

Attorneys for Appellees

---

**OPINION OF THE COURT**

---

BECKER, Circuit Judge.

This appeal from an order of the district court dismissing a petition for writ of habeas corpus presents the question whether the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, as applied through the Fourteenth Amendment, prohibits an enhanced sentence in a state resentencing proceeding brought pursuant to Pennsylvania's Drug Trafficking Mandatory Minimum Sentencing Statute, 18 Pa.Cons.Stat.Ann. § 7508 (1990), after the initial sentence was reversed on appeal. Resolution of this issue requires us to decide which of two arguably controlling Supreme Court decisions determines the outcome. In Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852 (1981), the Supreme Court held that the Double Jeopardy Clause precluded the state from seeking the death penalty at a second capital sentencing proceeding after the defendant's first jury declined to impose such a penalty. In

3

contrast, in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426 (1980), the Court found no violation of the Double Jeopardy Clause resulting from a sentence enhancement under former 18 U.S.C. § 3576 following appellate review in a noncapital case.  We conclude that DiFrancesco is controlling and hold that the Double Jeopardy Clause does not bar the Pennsylvania proceeding at issue.  We therefore affirm the order of the district court dismissing the habeas corpus petition.

## I.

Petitioner, Joseph Wilmer, was convicted following a bench trial in the Court of Common Pleas of Philadelphia County of possessing crack cocaine with intent to deliver.  Wilmer had been found with 61 clear plastic vials with orange caps containing an off-white substance.  Two of the vials were analyzed by the Commonwealth's chemist and found to contain cocaine, 37 and 43 milligrams respectively.[0]  The Commonwealth timely notified Wilmer of its intent to proceed under the mandatory sentencing provisions of 18 Pa.Cons.Stat.Ann. § 7508, Pennsylvania's Drug Trafficking Mandatory Minimum Sentencing Statute.[0]

---

[0]The specific amount of cocaine found in the two tested vials was brought out at the trial rather than at the sentencing hearing.
[0]Before the 1990 amendments, Section 7508 provided in relevant part, as follows:

> (a) General rule. -- Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

> * * *

4

At a sentencing hearing on April 5, 1990, the issue was whether petitioner was subject to § 7508(a)(3)(i), which provided for a mandatory minimum sentence of one year and a $5,000 fine

---

> (3) A person who is convicted of violating section 13(a)(14) or (30) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is coca leaves or is any salt, compound, derivative or preparation of coca leaves . . . shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:
>
> (i) upon the first conviction when the amount of the substance involved is at least 2.0 grams and less than ten grams; one year in prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity . . . ;
>
> * * *
>
> (b) Proof of sentencing. -- Provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The Court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.
>
> * * *
>
> (d) Appellate review. -- If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

5

when "the amount of the substance involved is at least 2.0 grams and less than ten grams."[0]  The evidence presented at the sentencing hearing (established through stipulation) showed that the aggregate weight of the substance when the contents of the sixty-one vials were mixed was 2.6 grams.  The state did not show what portion of the 2.6 grams was actually cocaine as opposed to a non-cocaine substance used to dilute the mixture.[0]

The trial court held that the Commonwealth had not proved by a preponderance of the evidence that the amount of cocaine involved was 2.0 grams.  Only 2 of 61 vials had been analyzed, and the amount of cocaine discovered in these two vials, in the court's view, did not justify an extrapolation to 2.0 grams of cocaine in the 61 vials.  The court therefore refused to apply § 7508(a)(3)(i) and instead sentenced Wilmer to 9 to 18 months confinement to be followed by one year of probation.  The Commonwealth appealed the sentence pursuant to §7508(d), which authorizes an appeal by the Commonwealth when the sentencing court fails to apply the mandatory minimum sentence required by that statute.  The Pennsylvania Superior Court reversed and remanded the case for imposition of the more severe

---

[0]On December 19, 1990, the Pennsylvania Legislature amended this section to make the mandatory minimum depend not just on the amount of substance involved but rather the aggregate weight of the compound or mixture.  The amended provision now reads: "when the **aggregate weight of the compound or mixture containing the substance involved** is at least 2.0 grams and less than ten grams . . . ."  18 Pa.Cons.Stat.Ann. § 7508 (Supp. 1993) (emphasis added).  The amendment has no applicability to this appeal.

[0]The total amount of cocaine in the two analyzed vials had been shown only to be eighty milligrams.

6

sentence, holding that the sampling of only 2 of 61 vials was adequate to support the extrapolation. Wilmer's request for allocatur was denied by the Pennsylvania Supreme Court.

On December 2, 1992, Wilmer filed a petition for a writ of habeas corpus in the District Court for the Eastern District of Pennsylvania. The sole claim raised was the alleged impingement of the constitutional right not to be placed twice in jeopardy by reason of being subjected to a second sentence enhancement proceeding under 18 Pa.Cons.Stat.Ann. § 7508. Respondents[0] answered the petition, addressing its merits.[0] The district court dismissed the petition, and this appeal followed.

On June 10, 1993, a motions panel of this court granted Wilmer's request for a certificate of probable cause to appeal and appointed counsel. After briefs were filed, the Supreme Court granted certiorari in Caspari v. Bohlen, 113 S.Ct. 2958 (1993), which presented an issue virtually identical to this appeal. This (merits) panel stayed the appeal pending the outcome of Caspari v. Bohlen, 114 S.Ct. 948 (1994). We then requested and received supplemental briefing on Caspari's impact on the case.[0]

II.

---

[0]Respondents are as follows: (1) Nathaniel Johnson, Director, Pretrial Services Division of Philadelphia Court of Common Pleas; (2) the District Attorney for Philadelphia County; and (3) the Attorney General of the State of Pennsylvania.
[0]The respondents properly conceded that petitioner had exhausted his state remedies under 28 U.S.C. § 2254(b).
[0]Wilmer has represented that the state trial court has continued the resentencing pending the outcome of this appeal.

7

We must initially determine whether the Supreme Court's decision in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989)(plurality opinion), bars consideration of the double jeopardy issue.  Under Teague, a federal court is precluded from "granting habeas corpus relief to a state prisoner based on a [new] rule announced after his conviction and sentence became final."  Caspari v. Bohlen, 114 S.Ct. at 953 (citation omitted). The Teague analysis is ordinarily the first step when reviewing a federal habeas case.  Schiro v. Farley, 114 S.Ct. 783, 788 (1994).  The rule, however, is not jurisdictional, and "a federal court may, but need not, decline to apply Teague if the State does not argue it."  Caspari, 114 S.Ct. at 953.

In this case, respondents failed to raise a Teague argument in the district court or in their brief on appeal.  The issue was not raised until we, sua sponte, requested supplemental briefs addressing the nonretroactivity principle.  Not surprisingly, the respondents now argue that Teague forecloses any habeas relief.  Relying primarily on the Supreme Court's recent opinion in Caspari, they contend that Wilmer's double jeopardy argument, if accepted, would constitute a new rule which cannot be applied retroactively in a collateral proceeding.[0]

---

[0] A state conviction and sentence become final for the purpose of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a timely petition for a writ of certiorari has elapsed.  Caspari, 114 S.Ct. at 953.  Wilmer's sentence became final on December 17, 1992, ninety days after September 19, 1992, the date the Pennsylvania Supreme Court denied the petition for allocatur and he did not petition the Supreme Court for certiorari.

8

The respondents' argument has obvious force. In Caspari, the habeas petitioner claimed that the Double Jeopardy Clause prohibited the state from subjecting him to successive noncapital sentence enhancement proceedings. The State argued, as it had in the lower courts and in its brief on the merits, that the nonretroactivity principle articulated in Teague barred the relief sought by the petitioner. Agreeing with the state, the Supreme Court declined to address the merits of the double jeopardy claim. Instead, the Court held that granting the petitioner's request for relief "required the announcement and application of a new rule of constitutional law." Id. at 957. The Court found that "neither of the two narrow exceptions to the nonretroactivity principle applie[d] to the case," since the "new rule" was neither the type that placed "certain kinds of primary, private individual conduct beyond the power of the criminal law–making authority to proscribe" nor a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Id. at 956 (quotations and citations omitted).

Recognizing the similarity between Caspari and the instant appeal, we nonetheless find the cases distinguishable. In Caspari, the State properly raised the Teague issue in the lower courts. Consequently, the Court held that it "must apply Teague before considering the merits of the claim." Id. at 953 (citation omitted). The respondents here did not assert the Teague rule until we identified the issue and requested supplemental briefing. However, the appropriate time for arguing

9

that Teague barred consideration of petitioner's double jeopardy claim was in the answer to the habeas petition and not in a supplemental brief requested by the court on appeal. The respondents should have been aware of the Teague defense, since Teague was decided prior to Wilmer's filing of his habeas petition. See Hanrahan v. Greer, 896 F.2d 241, 245 (7th Cir. 1990)("Disputes about the retroactive application of constitutional decisions have pervaded criminal procedure over the last 25 years."). Moreover, in Wilmer's memorandum in support of his petition for a writ of habeas corpus, he argued at length the applicability of the Eighth Circuit's decision in Bohlen v. Caspari, 979 F.2d 109 (1992), which begins with a discussion of Teague.

We hold that respondents' failure to raise the issue in the district court constitutes a waiver of any Teague defense. Schiro, 114 S.Ct. at 788-89. Although we have the discretion to reach the State's Teague defense sua sponte, id. at 789, we decline to do so in this case. In this respect we follow the lead of the Court of Appeals for the Seventh Circuit in Hanrahan, which declined to address the Teague question sua sponte, noting that the court need not go into a Teague analysis where the state failed to preserve an objection in the district court to the retroactive application of a new rule. 896 F.2d at 245. We therefore turn to the merits.

III.

10

"It is well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been <u>acquitted</u> of the crime charged." <u>Bullington</u>, 451 U.S. at 437, 101 S.Ct. at 1857 (citations omitted).[0] Following an acquittal, the state cannot obtain a new trial by means of an appeal even though the acquittal appears to be in error. <u>Green v. United States</u>, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223-24 (1957). It sometimes has been explained that the prosecution gets one fair opportunity to present whatever evidence it can muster, and failing in this effort, does not deserve a second opportunity to establish guilt. <u>Burks v. United States</u>, 437 U.S. 1, 16-17, 98 S.Ct. 2141, 2149-50 (1978).

The Supreme Court traditionally has refused to extend the Double Jeopardy Clause to sentencing. <u>Caspari</u>, 114 S.Ct. at 955. "The imposition of a particular sentence usually is not regarded as an `acquittal' of any more severe sentence that could have been imposed." <u>Bullington</u>, 451 U.S. at 438, 101 S.Ct. at 1857. First, "a sentence does not have the qualities of constitutional finality that attend an acquittal." <u>DiFrancesco</u>, 449 U.S. at 134, 101 S.Ct. at 436. Second, noncapital sentencing procedures generally do not have the hallmarks of a trial on guilt or innocence. <u>Bullington</u>, 451 U.S. at 438, 101 S.Ct. at 1858.

---

[0]The Double Jeopardy Clause is made applicable to the states through the Fourteenth Amendment. <u>Benton v. Maryland</u>, 395 U.S. 784, 89 S.Ct. 2056 (1969).

11

In DiFrancesco, a case involving a statute similar to the one at issue in this appeal, the defendant was convicted in federal court of violating the Organized Crime Control Act of 1970, 18 U.S.C. § 3575, a statute predating the United States Sentencing Guidelines. Section 3575 provided for an increased sentence upon proof at a sentencing hearing that the convicted defendant was a "dangerous special offender." After the defendant was found guilty of the racketeering counts, a dangerous special offender hearing was held. The district court made findings of fact and ruled that the defendant was a dangerous special offender within the meaning of § 3575, but the court's sentence resulted only in one additional year of imprisonment beyond that which the defendant had received on the racketeering counts.

Section 3576 of Title 18 provided for an appeal by the government to correct a sentence imposed after § 3575 proceedings. The government appealed, claiming that the district court had abused its discretion in imposing such a lenient sentence. The court of appeals rejected the government's position, concluding that the risk of substitution of a greater sentence upon an appeal by the government under § 3576 violated the Double Jeopardy Clause. The Supreme Court reversed, holding that the increase of a sentence on review under 18 U.S.C. § 3576 did not violate the Double Jeopardy Clause. Specifically, the Court rejected the contention that the imposition of a sentence under that statute constituted an acquittal of a more serious sentence that could have been imposed, because a defendant had no

12

expectation of finality until the statutory appeal process was completed.

In contrast, in Bullington, a capital case, the Court carved out an exception to the general rule that the Double Jeopardy Clause does not apply in the sentencing context.[0]  The Court held that the state could not seek the death penalty at a second capital sentencing hearing without violating the Double Jeopardy Clause where the defendant's first jury had declined to impose that penalty.  See also Arizona v. Rumsey, 467 U.S. 203, 104 S.Ct. 2305 (1984) (expanding Bullington to include cases where a judge determines the sentence in a capital sentencing proceeding).  Although the Court reaffirmed the general rule that the Double Jeopardy Clause does not prohibit imposing a harsher sentence upon retrial, it held that a capital sentencing hearing is not a typical discretionary sentencing hearing.  It noted that under Missouri law the prosecution in a capital sentencing hearing does not merely recommend a sentence, but undertakes the

---

[0]At issue in Bullington was the Missouri death penalty statute, which provided for a separate sentencing proceeding at which the prosecution had to prove the existence of an aggravating circumstance beyond a reasonable doubt.  At the guilt phase of the defendant's trial, the jury returned a verdict of guilty of capital murder.  At the sentencing hearing, the jury returned a verdict fixing the defendant's punishment at life in prison without the possibility of parole.  The defendant appealed his conviction and won a new trial on a jury fair cross-section of the community claim.  The state then served notice that it would again seek the death penalty on retrial.  A defense motion to strike the notice, grounded in the Double Jeopardy Clause, was granted.  Following an appeal to the Missouri Supreme Court, the United States Supreme Court granted certiorari "in order to consider the important issues raised by petitioner regarding the administration of the death penalty (footnote omitted)." Bullington, 451 U.S. at 437, 101 S.Ct. at 1857.

13

burden of proving certain facts beyond a reasonable doubt in an effort to obtain the harshest sentence.  The sentencer's discretion also is severely cabined because the sentencer is limited to the choice between life and death.

More importantly for this case, the Bullington court distinguished DiFrancesco as follows:

> In only one prior case, United States v. DiFrancesco, has this Court considered a separate or bifurcated sentencing procedure at which it was necessary for the prosecution to prove additional facts.  The federal statute under consideration there, the "dangerous special offender" provision of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 3575 and 3576, requires a separate presentence hearing.  The Government must prove the additional fact that the defendant is a "dangerous special offender," as defined in the statute, in order for the court to impose an enhanced sentence.  But there are highly pertinent differences between the Missouri procedures controlling the present case and those found constitutional in DiFrancesco . . . .

451 U.S. at 440, 101 S.Ct. at 1859.

The Court went on to discuss the important procedural differences between Missouri's death penalty statute and the federal dangerous special offender statute.  They included that the federal judge has a number of sentencing choices under 18 U.S.C. § 3575, whereas a Missouri jury must choose between life and death, and that the government in a § 3575 proceeding need only prove that the defendant is a dangerous offender by a preponderance of the evidence, whereas the state in a capital sentencing proceeding must prove the existence of an aggravating

14

circumstance beyond a reasonable doubt. Id. at 440-41, 101 S.Ct. at 1859. The Court also noted that the statute at issue in DiFrancesco expressly provided for appellate review of a sentence on the record of the sentencing court. Id. In essence, the Court saw the sentencing determination in Bullington as constituting an acquittal for lack of evidence. By necessary implication, the sentencing determination in DiFrancesco was not an "acquittal" because, given the more lax procedures used at the sentencing hearing, it was not a trial-like proceeding.

IV.

Against this background, we turn to Wilmer's double jeopardy claim as it relates to a resentencing proceeding under 18 Pa.Cons.Stat.Ann. § 7508. Wilmer argues that the constitutional protection against double jeopardy bars resentencing in his case. Specifically, he claims that the state trial court "acquitted" him of the § 7508 mandatory sentence in a sentencing proceeding that was more like a trial on the issue of guilt than a typical discretionary sentencing hearing. Wilmer grounds his argument on the Supreme Court's opinions in Bullington and Rumsey.

After reviewing the relevant case law and the state statute at issue in this appeal, we reject petitioner's argument. We are satisfied that the Double Jeopardy Clause does not prohibit an enhanced sentence in a state resentencing proceeding brought pursuant to 18 Pa.Cons.Stat.Ann. § 7508. First, we draw instruction from the Supreme Court's decision in DiFrancesco. The

15

statute at issue there specifically provided that the sentence was subject to appeal.  The Court found that under such circumstances the defendant "is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired."  Id. at 136, 101 S.Ct. at 437.  Like the defendant in DiFrancesco, Wilmer had notice of Pennsylvania's mandatory sentencing statute and its appeal provisions.  Section 7508(d) expressly states that the Commonwealth "shall have the right to appellate review of the action of the sentencing court."  Thus, the petitioner had no expectation of finality in his sentence until the Commonwealth's appeal was concluded or the time for appeal had expired.

In DiFrancesco, the Court also noted the human considerations that bar a prosecution after an acquittal.  Id. at 136, 101 S.Ct. at 437.  For example, the defendant will be subjected to anxiety and insecurity and the possibility that he or she may be found guilty even though innocent.  The Court opined that those considerations have no significant application to the prosecution's statutory right to have a sentence reviewed because the limited appeal and subsequent resentencing does not approximate the ordeal of a trial on the basic issue of guilt or innocence.  Id.

Like DiFrancesco, the resentencing proceeding under §7508 will not subject the petitioner to a second trial.  As we read the opinion of the Pennsylvania Superior Court, on remand the trial court has no choice but to impose the appropriate

16

mandatory minimum sentence set out in § 7508; no further trial-like proceedings appear necessary. Indeed, from our reading of §7508(d), it does not appear that further proceedings would ever be required on resentencing where a trial court refused to impose the mandatory minimum sentence. See, e.g., Commonwealth v. Jones, 413 Pa. Super. 482, 605 A.2d 825, appeal denied, 531 Pa. 652, 613 A.2d 557 (1992); Commonwealth v. Logan, 404 Pa. Super. 100, 590 A.2d 300, appeal denied, 528 Pa. 622, 597 A.2d 1151 (1991); Commonwealth v. Brown, 389 Pa. Super. 66, 566 A.2d 619 (1989). But even if additional proceedings were necessary, the Commonwealth would do nothing more than offer a chemical analysis of the entire mixture[0] to show that the two vials that were tested really were representative of the entire population of vials.

The prosecution's burden of proof under § 7508 also suggests that the sentencing proceeding does not resemble a trial. Pursuant to § 7508(b), the trial court invokes the mandatory sentencing statute if it determines by a preponderance of the evidence that the section applies. This standard, which is the same standard involved in DiFrancesco, "stands in contrast to the reasonable-doubt standard" at issue in Bullington, 451 U.S. at 441, 101 S.Ct. at 1859.

In light of the caselaw, the standard of proof required at sentencing proceedings is certainly a factor in determining

---

[0]As we read the record, after the two vials were tested, the contents of all 61 vials were dumped together and weighed. Thus, testing of additional vials would no longer be possible.

17

whether the imposition of one sentence constitutes an acquittal of another.  More precisely, the use at a sentencing hearing of a preponderance of the evidence standard of proof rather than the traditional beyond a reasonable doubt standard is significant. See Bullington, 451 U.S. at 440-41, 101 S.Ct. at 1859.  The lower standard of proof signifies a more lax procedure which in turn signifies that a hearing is not, in the Bullington calculus, trial-like.  DiFrancesco, 449 U.S. at 118-19 n.1, 101 S.Ct. at 427-28 n.1.[0]

We also draw instruction from the Supreme Court's decision in Caspari where it stated, albeit in dictum, that, had it decided the broader question of whether the Double Jeopardy Clause bars an enhanced sentence in noncapital cases, it would have limited Bullington and Rumsey to the capital sentencing context.  The Court stated that "[b]oth Bullington and Rumsey were capital cases, and our reasoning in those cases was based largely on the unique circumstances of a capital sentencing proceeding."  Caspari, 114 S.Ct. at 954.  The Court explained that its prior decisions "clearly establish that a sentenc[ing in a noncapital case] does not have the qualities of constitutional

---

[0]We use the phrase "Bullington calculus" advisedly.  We are acutely aware that the sentencing proceedings with which federal judges regularly deal these days are driven by facts that are often developed in extensive sentencing hearings.  While these may sometimes feel trial-like, they differ markedly from actual trials, see generally Edward R. Becker, Insuring Reliable Fact Finding in Guidelines Sentencing: Must the Guarantees of the Confrontation and Due Process Clauses Be Applied?, 22 Cap.U.L.Rev. 1 (1993), and, at all events, are not trial-like within the "Bullington calculus."

finality that attend an acquittal."  Id. at 955 (citations and quotations omitted).

We have previously considered a double jeopardy challenge to a statutory scheme designed, as is Pennsylvania's here, to reduce the discretion of the sentencer by providing for a government appeal of an improper sentence.  In United States v. McMillen, 917 F.2d 773 (3d Cir. 1990), the government appealed a sentence imposed under the United States Sentencing Guidelines after the defendant had started serving the sentence, arguing that the district court had erred in not adjusting the sentence upward pursuant to § 3B1.3.  This Court agreed and remanded for an increased sentence.  In doing so, we rejected the argument that the government's appeal violated the Double Jeopardy Clause.

Relying on DiFrancesco, we explained that the prohibition against double jeopardy is not implicated where a statute specifically provides for the government to obtain appellate review.  We noted that Congress had provided the government with the means to appeal an incorrect application of the federal sentencing guidelines in 18 U.S.C. § 3742(b).  Id. at 776-777 & n.6.  Thus, the defendant was charged with the knowledge that the government could appeal and had no expectation of finality until the appeal was concluded or the time for appeal had expired.  We see no real difference between the federal government's right to have an enhanced sentence meted out at a subsequent sentencing proceeding under the Guidelines and the circumstances presented by this appeal.

19

V.

In sum, we do not think that double jeopardy protection attaches to sentencing proceedings under § 7508. The statute expressly grants the state the right to appeal a sentencing determination; thus, the petitioner did not have a reasonable expectation of finality in the original sentence. Moreover, the sentencing proceedings are not, within the Bullington calculus, so trial-like as to implicate the Double Jeopardy Clause. Here, the Commonwealth made only the showing it had to make under the preponderance of the evidence standard. The petitioner offered nothing in rebuttal. In fact, at the actual hearing, all that happened in terms of presentation of evidence was that the parties stipulated to a single fact -- the total weight of the substance. We fail to see how this resembles a trial. See DiFrancesco, 449 U.S. at 124, 101 S.Ct. at 430.

The order of the district court denying Wilmer's petition for a writ of habeas corpus will be affirmed.